# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF MASSACHUSETTS
# EASTERN DIVISION

| | |
|---|---|
| In re: | ) |
| | ) |
| WEN JING HUANG and | ) Chapter 7 |
| CAN QI LIANG, | ) Case No. 11-10416-HJB |
| | ) |
| Debtors | ) |
| | ) |
| JUAN JUAN CHEN, XING HUA | ) |
| CHEN, YAN XIONG CHEN, | ) Adversary Proceeding |
| SHU FENG GAO, CHUN YAN | ) Case No. 12-01265-HJB |
| GUAN, CAROL HUANG,   YAT | ) |
| MAN LAW, QIU MEI LI, CAI MEI | ) |
| LIU, LI JUAN LIU, MEI YING MAI, | ) |
| ZHU LAN SU, CONNIE IOK WU, | ) |
| NIAN CI XIE, SHAO JUAN | ) |
| ZHONG, and MEI YAN ZHOU, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) |
| | ) |
| WEN JING HUANG, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OF DECISION

Before the Court is a "Motion for Partial Summary Judgment Confirming the

Court's Ability to Enter Judgment Under the Massachusetts Wage Act or, in the

Alternative, for Abstention on the Issue of Liability and Amount Due to Plaintiffs" (the

"Summary Judgment Motion") filed by the plaintiffs in this dischargeability action (the

"Plaintiffs") against the debtor, Wen Jing Huang (the "Debtor").[1]  The Plaintiffs have also

filed a "Motion to Consolidate Adversary Proceeding and Objection to Proofs of Claim"

(the "Consolidation Motion").    While the resolution of the Consolidation Motion is

relatively straightforward, the disposition of the Summary Judgment Motion requires the

Court to traverse rocky jurisprudential terrain.  The question is whether the Court has

the subject matter jurisdiction to determine the existence and scope of the Debtor's

liability on the Plaintiffs' asserted state-law claims.    Said otherwise, if the Court

determines that the Debtor is liable to the Plaintiffs incident to this dischargeability

action, can (or should) the Court enter a judgment in favor of the Plaintiffs that liquidates

the underlying debt?


I.    FACTS AND TRAVEL OF THE CASE

The Debtor filed a voluntary petition under Chapter 13 of the United States

Bankruptcy Code (the "Bankruptcy Code" or the "Code")[2] on January 19, 2011.  On the

schedules filed with the petition, the Debtor disclosed her ownership of "Millennium Day

Care Center" ("Millennium") located in Boston, Massachusetts, noting that Millennium

was also a debtor in a pending Chapter 11 case.[3]  The Debtor never achieved

confirmation of a Chapter 13 plan and on May 12, 2011, the case was converted to one

---

[1] The Debtor's petition was filed jointly with her spouse, Can Qi Liang.  Because the spouse is not a party to this adversary proceeding or allegedly liable on the claims asserted in the main case, the Court's reference to "the Debtor" in this Memorandum is to Wen Jing Huang only.

[2] See 11 U.S.C. §§ 101 et seq.  All references to statutory sections are to the Bankruptcy Code unless otherwise specified.

[3] The Debtor's case was originally assigned to Judge William Hillman, who transferred the case to this Court on April 10, 2013 in light of the related corporate case which had earlier been filed and assigned to this Court.

under Chapter 7 at the Debtor's request. On May 26, 2011, the Debtor filed a statement indicating that there were no postpetition creditors.

On May 27, however, Millennium filed an Amended Schedule E in its case (which had also been converted to one under Chapter 7) disclosing debts owed to various employees (the "Creditor Employees") on account of asserted wage claims.  Those Creditor Employees ultimately filed a motion in the Millennium case seeking allowance and payment of $52,573.40 in administrative wage claims (the "Administrative Claims Motion"), which they maintain accrued while Millennium operated in Chapter 11.  The Chapter 7 trustee (the "Millennium Trustee") opposed, primarily on the grounds that the Millennium estate had inadequate funds to pay the claims immediately and that Chapter 7 administrative expenses were likely to exhaust the projected available funds.  The Millennium Trustee eventually reached a settlement with the Creditor Employees, agreeing that the administrative claims would be deemed allowed in the amounts claimed, but paid only if sufficient funds remained in the estate to make a distribution to the holders of Chapter 11 administrative expense claims.  To date, no distribution in the Millennium case has been made.

The Creditor Employees, however, also maintain that the Debtor is individually liable for the unpaid wages under Massachusetts General Laws ("MGL") ch. 149, §§ 148 and 150 (the "Massachusetts Wage Act").  In the Debtor's individual Chapter 7 case, 12 of the 16 Creditor Employees filed proofs of claim for those unpaid wages (the "Claimants").  And on October 5, 2012, the Creditor Employees (here, the Plaintiffs) filed the instant complaint (the "Complaint"; the "Adversary Proceeding") against the Debtor, objecting to the dischargeability of their wage claims under § 523(a) on grounds that the

Debtor fraudulently induced them to work for Millennium postpetition, and then failed to pay their wages despite having the financial means to do so.[4] The Debtor filed an answer (the "Answer") to the Complaint, denying personal liability under the Massachusetts Wage Act for any unpaid wages.  She further disputed the amounts of the alleged debts, maintaining that all or part of the wages had been paid.

On April 9, 2013, the Debtor filed an objection to the Creditor Employees' proofs of claim (the "Claims Objection").  In the Claims Objection, the Debtor again argued that she is not personally liable for any unpaid wages under the Massachusetts Wage Act and again disputed the scope of any unpaid wages, maintaining that all or part of each claim was satisfied by Millennium.  The Claimants have responded in opposition to the Claims Objection, and the matter remains pending.

Presently before the Court are two motions filed by the Plaintiffs.  In the Consolidation Motion, the Plaintiffs have asked that the pending Claims Objection be consolidated with the Adversary Proceeding.  And in the Summary Judgment Motion, the Plaintiffs seek a determination as to the scope of this Court's subject matter jurisdiction with regard to the liquidation of their claims under the Massachusetts Wage Act.  The Debtor objected to both motions, and the Court took the matters under advisement.


II.    POSITIONS OF THE PARTIES

   A.    **Consolidation**

The Plaintiffs first request consolidation of the Claims Objection and the

---

[4] The Plaintiffs also object to the Debtor's discharge generally, pursuant to § 727.  That particular aspect of the Adversary Proceeding, however, is not relevant to the issues presently before the Court.

Adversary Proceeding pursuant to Federal Rule of Civil Procedure (the "Federal Rules") 42, made applicable to these proceedings by Federal Rule of Bankruptcy Procedure (the "Bankruptcy Rules") 7042.  Noting that the Claims Objection challenges proofs of claim filed by 12 of the 16 Plaintiffs, which proofs of claim represent the same debts alleged to be nondischargeable in this Adversary Proceeding, the Plaintiffs maintain that the factual and legal questions at issue in the two matters overlap – i.e., both require a determination of the Debtor's liability under the Massachusetts Wage Act and the extent to which any debt has been satisfied.

The Plaintiffs argue that the benefits of consolidation outweigh any potential costs, as consolidation will avoid re-litigation of the Debtor's liability and the amount of outstanding unpaid wages, and will allow discovery to proceed more efficiently by avoiding separate discovery processes and schedules.  Furthermore, the Plaintiffs maintain that, because both the Claims Objection and the Adversary Proceeding are in their preliminary stages, there will be no delay occasioned by consolidation and no prejudice to the Debtor.

The Debtor, however, attempts to distinguish the issues raised in the Claims Objection from those raised in the Adversary Proceeding, maintaining that consolidation is not appropriate because the matters involve separate legal and factual issues. According to the Debtor, while the existence and amount of liability are at issue in the Claims Objection proceeding, the dischargeability questions in the Adversary Proceeding involve different factual and legal determinations regarding the Debtor's conduct.  In addition, the Debtor says, consolidating the proceedings would cause unnecessary expense and delay.

5

### B.    Jurisdiction

Through the Summary Judgment Motion, the Plaintiffs seek a determination that this Court has subject matter jurisdiction to determine not only the dischargeability of the Massachusetts Wage Act claims against the Debtor, but also to liquidate the amount of those claims and enter judgment accordingly.   Recognizing the jurisprudential split on the question of whether a bankruptcy court has subject matter jurisdiction to liquidate a debt in the context of an adversary proceeding challenging the dischargeability of that debt, the Plaintiffs urge this Court to adopt the majority position and hold that it does, indeed, possess the requisite jurisdiction.

The Debtor opposes, arguing that this Court does not have subject matter jurisdiction to enter a money judgment in connection with a nondischargeability proceeding brought under 11 U.S.C. § 523(a).   The Debtor urges the Court to reject the majority position and instead follow the reasoning of the Bankruptcy Appellate Panel for the First Circuit (the "BAP") articulated in Cambio v. Mattera (In re Cambio), 353 B.R. 30 (B.A.P. 1st Cir. 2004), and conclude that the Court does not have jurisdiction to determine the Debtor's liability or to liquidate the Plaintiffs' claims under the Massachusetts Wage Act.   Relying on Cambio, the Debtor contends that, in the context of a dischargeability proceeding, the bankruptcy court has jurisdiction only to decide the discrete issue of dischargeability, and not to determine the totality of the claims, counterclaims, and defenses that could be asserted under nonbankruptcy law.

In response, the Plaintiffs attempt to differentiate Cambio by noting that, in Cambio, the facts relevant to the dischargeability of the debt were not "inextricably intertwined" with the facts relevant to the legitimacy or amount of that debt. June 11,

2013 Hr'g Tr. 6:11-7:23, ECF No. 88.   The Plaintiffs would further have the Court

distinguish <u>Cambio</u> on grounds that in this case, unlike the case before the BAP, there

may be assets recoverable for distribution, since the Complaint also alleges that the

Debtor used assets of her individual bankruptcy estate and the Millennium estate

without Court authorization.   Therefore, according to the Plaintiffs, a determination of

the amount of the underlying claims may have some impact on the bankruptcy estate

and thus falls within the Court's subject matter jurisdiction.[5]


III.   <u>DISCUSSION</u>

   **A.   Consolidation of the Claims Objection and Adversary Proceeding
         under Federal Rule 42**

   Federal Rule 42, made applicable in adversary proceedings by Bankruptcy Rule

7042, provides for the consolidation of proceedings that "involve a common party *and*

common issues of fact or law."   <u>Cruickshank v. Clean Seas Co.</u>, 402 F.Supp. 2d 328,

340 (D. Mass. 2005) (quoting <u>Seguro de Servicio de Salud de P.R. v. McAuto Sys.</u>

<u>Group, Inc.</u>, 878 F.2d 5, 8 (1st Cir. 1987)) (emphasis in original).   As the <u>Cruickshank</u>

court explained, "[o]nce this determination is made, the trial court has broad discretion

in weighing the costs and benefits of consolidation to decide whether that procedure is

appropriate."   <u>Id.</u> at 340-41; <u>see also</u> <u>Storlazzi v. Bakey</u>, 894 F. Supp. 494, 500 (D.

Mass. 1995) (considering "judicial economy and efficiency" and the court's "concern

over piece-meal litigation").   Where there are common parties and common issues of

---

[5] The Debtor also complains that what the Plaintiffs actually seek is an advisory opinion on an issue not yet ripe for review because the dischargeability of any purported debt has not yet been determined.   The Court disagrees.   For the reasons set forth below, the controversy is now properly before the Court and must be disposed of in order for this adversary proceeding to proceed to resolution.

law and fact, consolidation is commonly granted, unless the party opposing consolidation can show "demonstrable prejudice." <u>Cruickshank</u>, 402 F.Supp. 2d at 341.

Consolidation of the Claims Objection and Adversary Proceeding is appropriate here. Despite the Debtor's assertions to the contrary, the legal and factual issues not only overlap, but appear to be largely identical in the two proceedings.  Indeed, the objections raised by the Debtor to the proofs of claim filed in the main case are identical to those raised in the Answer filed in the Adversary Proceeding.  To the extent that the question of dischargeability under § 523(a) involves additional factual or legal issues regarding the Debtor's actions and intent, those additional legal and factual questions remain substantially intertwined with the facts underlying the claims asserted through the proofs of claim, as well as with the Debtor's defenses to those claims.

Given the legal and factual overlap between the issues implicated by the Claims Objection and the Complaint, any possible burden imposed by the consolidation of the actions is far outweighed by the benefits that will inure to the administration of the proceedings and to both parties if the matters are tried in tandem.  Rather than attempting to bifurcate discovery and litigation where such dissection may be difficult, if not impossible, the parties can proceed with one discovery and trial schedule, and the Court will not be forced to untangle a knot of interrelated factual and legal issues. Accordingly, this Court will grant the Consolidation Motion.[6]

**B.      The Bankruptcy Court's Subject Matter Jurisdiction to Liquidate Debts in a Dischargeability Action Under § 523(a).**

1.      <u>The Meaning of "Money Judgment" – A Pause for Clarification</u>

Before delving into the specifics of this Court's jurisdiction, a point of clarification

---

[6] To the extent that the Claims Objection contains objections to unrelated proofs of claim, however, those objections will proceed independently in the Debtor's main case.

regarding the precise issue before the Court is required.  The parties query whether in this, as in other dischargeability proceedings, the Court should, can, or will enter a "money judgment."  This Court has routinely stated, both in hearings and in written memoranda, that it will not issue "money judgments" in the context of dischargeability proceedings.  See, e.g., A.J. Rinella & Co., Inc. v. Bartlett (In re Bartlett), 397 B.R. 610, 623 n.13 (Bankr. D. Mass. 2008).  In so stating, the Court's use of the term "money judgment" has always been intended to refer to a judgment *enforceable by execution from this Court.*  See Mullarkey, 410 B.R. at 356 n.19 (stating that the Court's determination of nondischargeability "does not constitute a money judgment enforceable by execution from this Court").[7]

However, having now reflected on the parties' arguments in this case and having more carefully reviewed relevant case law, it has become obvious that the term "money judgment" means different things to different parties and different courts.  In many instances, the term "money judgment" has been used in a broader context, to refer not only to judgments executable in the bankruptcy court, but to refer to any judgment that conclusively quantifies or liquidates the amount of an underlying debt deemed nondischargeable.  The confusion caused by this semantic divide is considerable.  And in the discussion to follow, the Court will endeavor to distinguish legally relevant

---

[7] In the Bartlett case, as well as in Greene v. Mullarkey (In re Mullarkey), 410 B.R. 338, 356 n.19 (Bankr. D. Mass. 2009), this Court cited to Cambio v. Mattera (In re Cambio), 353 B.R. 30, 30-36 (B.A.P. 1st Cir. 2004) in support of its declination to enter a money judgment in each case. For reasons to be discussed later in this Memorandum, the Court finds that its wholesale reliance on the Cambio holding was in error.  However, the Court's position – namely, that a "money judgment" (as understood to be a judgment executable by this Court) should not issue in a dischargeability proceeding – remains the same.

discrepancies between the various uses of the term "money judgment" in the case law.[8]

This Court, however, will continue to use the term "money judgment" to refer *only* to a judgment that entitles a party to enforcement of the judgment in this Court.  And the Court will continue to deny any requests to issue money judgments in the context of dischargeability proceedings, as the Court continues to believe that such enforcement actions are beyond the scope of its subject matter jurisdiction.[9]

The issue presently before the Court – and the issue that continues to divide courts across the nation and within this district – is *not* whether a bankruptcy court has

---

[8] The Eleventh Circuit Court of Appeals has similarly made this distinction:

> [A] "judgment" is a term whose meaning depends on the context in which it is used.  For instance, a "final judgment" can simply be "any order from which an appeal lies."  Fed. R. Civ. P. 54(a).  Additionally, . . . a "final judgment" can be any resolution of a dispute from which a preclusive effect flows.  But, in terms of a judgment subject to execution, a "money judgment" must exist.  See Fed. R. Civ. P. 69(a)(1) ("A money judgment is enforced by a writ of execution, unless the court directs otherwise.").

Ziino v. Baker, 613 F.3d 1326, 1328 (11th Cir. 2010) (additional citation omitted).

[9] See, e.g., The Honorable Alan M. Ahart, Enforcing Nondischargeable Money Judgments: The Bankruptcy Court's Dubious Jurisdiction, 74 Am. Bankr. L.J. 115, 118-119 (2000).  As Judge Ahart explains:

> A proceeding to enforce a nondischargeable money judgment against the debtor clearly is not the bankruptcy case itself (nor the petition initiating the case), and should not involve any property of the estate.  Inasmuch as such a proceeding virtually always is an action to collect a money judgment pursuant to state law procedure, and does not require interpretation of any provision of the Bankruptcy Code, it does not *arise under* the Bankruptcy Code.  Nor is such a proceeding an administrative matter, as it is not an action to collect, liquidate or distribute estate property, to determine claims against the estate, or to grant, deny or revoke the debtor's discharge.  Similarly . . . the outcome of such a proceeding could not conceivably affect the estate being administered in bankruptcy.  Therefore, it seems that a bankruptcy court ordinarily will have no jurisdiction under Title 28 to enforce a nondischargeable money judgment against the debtor.

Id.  Accordingly, in order to enforce a nondischargeable debt, plaintiffs must avail themselves of the procedures for enforcing that judgment in a nonbankruptcy court of competent jurisdiction. See also id. at 119 n.25, 127 n.82.

subject matter jurisdiction to issue a "money judgment" (as defined by this Court).  This

Court has consistently concluded previously that it does not.  Rather, the question

presented is whether, in the context of a dischargeability proceeding, this Court has the

subject matter jurisdiction to liquidate or quantify the underlying debt and to determine

the debtor's liability thereon.  And for the reasons discussed below, the Court holds that

it *does* have subject matter jurisdiction to determine the amount of a debt and the

debtor's liability in connection with a dischargeability proceeding.[10]

> 2.    The Bankruptcy Court's Subject Matter Jurisdiction to Liquidate Debts in
>        Connection with Dischargeability Proceedings

Having clarified that the issue before the Court is whether a bankruptcy court

possesses subject matter jurisdiction to determine the amount and existence of a debt

alleged to be nondischargeable when that debt is based on a claim that arises under

state (or other nonbankruptcy) law, it is best to start at the beginning:

> Bankruptcy courts . . . have only the jurisdiction permitted under the
> Constitution and given to them by Congress.  Celotex Corp. v. Edwards,
> 514 U.S. 300, 307, 115 S.Ct. 1493, 1498, 131 L.Ed. 2d 403 (1995).  With
> the passage of 28 U.S.C. § 1334, Congress invested the district courts
> with original and exclusive jurisdiction for cases "under title 11," that is,
> the actual bankruptcy case commenced by the filing of a petition, and
> original but not exclusive jurisdiction for civil proceedings "arising under
> title 11, or arising in or related to cases under title 11."  28 U.S.C.
> § 1334(a) and (b).  Congress also granted the district courts the power to
> refer bankruptcy cases as well as civil proceedings which arise in or under
> the Bankruptcy Code and those related to bankruptcy cases to the
> bankruptcy courts.  28 U.S.C. § 157(a).  In Massachusetts, the district
> court has referred the broadest possible universe of cases which a
> bankruptcy court could hear, namely all cases over which the district court

---

[10] Because the parties spent substantial time debating whether or to what extent this Court's
orders or judgments would have preclusive effect in subsequent proceedings, the Court pauses
further to note that collateral estoppel and res judicata principles apply to *all* orders and
judgments of a bankruptcy court – not solely to "money judgments."  See  Whitehall Co., Ltd. v.
Barletta, 536 N.E. 2d 333, 336, 404 Mass. 497 (1999); Fidler v. E.M. Parker Co., Inc., 476
N.E.2d 595, 599, 394 Mass. 534 (1985); In re Cohen, 753 N.E. 2d 799, 805-806, 435 Mass. 7
(2001); see also Hann v. Educ. Credit Mgmt. Corp. (In re Hann), 711 F.3d 235 (1st Cir. 2013).

may exercise jurisdiction under either § 1334(a) or (b).  LR, D. Mass. 201.

An adversary proceeding, which is a civil proceeding, "arises under" the Bankruptcy Code, if it involves a "cause of action created or determined by a statutory provision of title 11." Wood v. Wood (In re Wood), 825 F.2d 90, 96 (5th Cir. 1987).  In contrast, proceedings "arising in" a bankruptcy case "are those that are not based on any right expressly created by title 11, but nevertheless, would have no existence outside of the bankruptcy." Id. at 97.  Together, proceedings that "arise in" and "arise under" title 11 constitute the bankruptcy court's "core" jurisdiction. See 28 U.S.C. § 157(b); Id. at 96-97. . . .

A bankruptcy court has jurisdiction over a non-core proceeding provided the proceeding is "related to" a bankruptcy case.  The breadth of the bankruptcy court's related to jurisdiction is great but not unlimited. "The usual articulation of the test for determining whether a civil proceeding is related to bankruptcy is whether the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy." In re G.S.F. Corp., 938 F.2d 1467, 1475 (1st Cir. 1991) (quoting Pacor v. Higgins, 743 F.2d 984, 994 (3d Cir. 1984)). Proceedings which are outside the boundaries of § 1334(a) or (b), that is, proceedings which do not fall even within the "related to" jurisdiction, are outside of the subject matter jurisdiction of a bankruptcy court.

Vienneau v. Saxon Capital, Inc. (In re Vienneau), 410 B.R. 329, 333-34 (Bankr. D. Mass. 2009).

"Because '[n]othing is more directly at the core of bankruptcy administration . . . than the quantification of all liabilities of the debtor,' the bankruptcy court's determination whether to allow or disallow a claim is a core function." S.G. Phillips Constructors, Inc. v. City of Burlington, Vermont (In re S.G. Phillips Constructors, Inc.), 45 F.3d 702, 705 (2d Cir. 1995) (quoting In re BKW Sys., Inc., 66 B.R. 546, 548 (Bankr. D.N.H. 1986)); see also Cox v. Cox (In re Cox), 247 B.R. 556, 569 (Bankr. D. Mass. 2000); 28 U.S.C. § 157(b)(2)(B).  Accordingly, for those Plaintiffs who are also Claimants in the Debtor's main case and to whose proofs of claim the Debtor has objected, the Court unquestionably has the jurisdiction to determine the Debtor's liability

for, and the amount of, those debts.

But four of the Plaintiffs have not filed proofs of claim in the main case. As to them, the question remains – does the Court have jurisdiction to determine the Debtor's liability for and to liquidate the amount of those debts?  Some courts would say "no"[11]; others, "yes."[12]   The BAP has characterized the "yes" courts as those adopting an "expansive approach" and the "no" courts as those adopting a "limited approach," Cambio, 353 B.R. at 32, 33, and succinctly explained the divergence as follows:

> Most published decisions adopt the expansive approach, concluding that bankruptcy courts do have the power to enter money judgments on nondischargeable debts.  Indeed, every circuit to address the issue has held that there is federal bankruptcy jurisdiction to liquidate and enter a judgment on a nondischargeable debt.
>
> Generally, courts that routinely enter money judgments on nondischargeable debts focus on the close factual and logical relationship between the dischargeability proceeding and any proceeding on the underlying debt, and rely on theories of judicial economy and the bankruptcy court's inherent equitable powers.
>
> Courts adopting a limited jurisdiction approach conclude that bankruptcy courts do not have the power to enter money judgments on nondischargeable debts.  These courts generally conclude either that entry of a money judgment is outside the scope of the bankruptcy court's jurisdiction or that awards of monetary damages raise other issues appropriate only in a non-bankruptcy forum.
>
> The definitive decision cited by courts adopting the limited jurisdiction approach is In re Thrall, [196 B.R. 959].   In Thrall, the bankruptcy court examined the Bankruptcy Code and Federal Rules of

---

[11] See, e.g., Cambio, 353 B.R. 30; Am. Express Centurion Bank v. Losanno (In re Losanno), 291 B.R. 1 (Bankr. D. Mass. 2003); Porter v. Hamilton (In re Hamilton), 282 B.R. 22 (Bankr. W.D. Okla. 2002); First Omni Bank, N.A. v. Thrall (In re Thrall), 196 B.R. 959 (Bankr. D. Colo. 1996).

[12] See, e.g. Morrison v. W. Builders of Amarillo, Inc. (In re Morrison), 555 F.3d 473 (5th Cir. 2009); Cowen v. Kennedy (In re Kennedy), 108 F.3d 1015 (9th Cir. 1997); Longo v. McClaren (In re McClaren), 3 F.3d 958 (6th Cir. 1993); N.I.S. Corp. v. Hallahan (In re Hallahan), 936 F.2d 1496 (7th Cir. 1991); Baker v. Friedman (In re Friedman), 300 B.R. 149 (Bankr. D. Mass. 2003); Snyder v. Devitt (In re Devitt), 126 B.R. 212 (Bankr. D. Md. 1991).

Bankruptcy Procedure and concluded that while bankruptcy courts have jurisdiction to decide dischargeability complaints, they are not authorized to enter money judgments.  The Thrall court noted that § 17(c)(3) of the former Bankruptcy Act required a bankruptcy court not only to determine the dischargeability of a debt, but also to enter judgment and make necessary orders for its enforcement.  However, the more recently enacted Bankruptcy Code explicitly mentions dischargeability and not money judgments against the debtor.  The Thrall court reasoned, therefore, that since Congress did not include an explicit authorization to enter money judgments in the new Bankruptcy Code, it must have intended to restrict the power of the bankruptcy courts.

Adopting the approach taken by the Thrall court, the bankruptcy court in Hamilton similarly concluded that by not specifically empowering bankruptcy courts to render money judgments on nondischargeable debts, Congress intended to limit bankruptcy courts to deciding dischargeability issues.  "'Determination of dischargeability of a debt is a limited function under the Code.  It only defines the scope of discharge and does not substitute for a full and complete determination of all claims and defenses which can be asserted under non-bankruptcy law.'" [Hamilton, 282 B.R.] at 24 (citing Thrall, 1986 B.R. at 968).

Cambio, 353 B.R. at 32-33 (additional citations omitted).

If the use of the term "money judgment" in Cambio and the decisions cited therein were limited only to executable judgments, this Court would gladly join with the minority and adopt the "limited approach."   However, in both Thrall and Cambio, the term "money judgment" is used in the broader sense as shorthand for a judgment that liquidates the amount of the underlying debt.  At first reading, in fact, the Thrall court appears to agree with the majority that a bankruptcy court has the authority to liquidate a debt in connection with a dischargeability proceeding, noting that the "declaratory" judgment the court entered in the case "determines that a debt is nondischargeable *and quantifies it*."  Thrall, 196 B.R. at 962 (emphasis supplied).   Later in its opinion, however, the Thrall court opines that it is only the claims allowance process pursuant to § 502 that constitutes an "action to determine the debt," id. at 966, while a

14

dischargeability proceeding "only defines the scope of the discharge and does not substitute for a full and complete determination of all claims and defenses which can be asserted under non-bankruptcy law," id. at 968.  Thus, in the view of the Thrall court, a judgment in a dischargeability proceeding, even where the debt is "quantified" in the judgment, would merely "set the *outside boundary* of a debtor's post-discharge liability." Id. at 973 (emphasis supplied).  And in Cambio, the majority opinion similarly appears to use the term "money judgment" to encompass any judgment that liquidates the underlying debt.   See Cambio, 353 B.R. at 37 (Rosenthal, J., dissenting) ("I see no basis to deviate from the unanimous Circuit law which holds that there is federal bankruptcy jurisdiction *to liquidate* and enter a money judgment on a non-dischargeable debt. . . . I would find that the bankruptcy court had jurisdiction to *determine the amount of damages*.")  (emphasis supplied).

In Cambio, the majority agreed with the Thrall court's analysis, at least in the context of a no-asset Chapter 7 case.  The BAP concluded that the bankruptcy court did not have the jurisdiction to liquidate the debt involved in the dischargeability action before it, since "the only effect of the money judgment against this debtor would be to enhance [the creditor's] future ability to collect from [the debtor's] post-bankruptcy income and assets, with no effect at all on property of the bankruptcy estate or creditors' claims against the estate."   Id. at 33-34.  Accordingly, the Cambio panel held that the bankruptcy court's role was limited solely to determining the dischargeability, and not the amount, of the debt.

But underlying the Thrall and Cambio courts' analyses are two assumptions with which this Court cannot agree.  The first is the assumption that a matter having no effect

on the bankruptcy estate cannot constitute either a "core" or "related to" matter within the bankruptcy courts' jurisdiction. <u>Thrall</u>, 196 B.R. at 968-69; <u>Cambio</u>, 353 B.R. at 34. True, the question of whether the outcome of a particular matter may have an effect on the bankruptcy estate is often of paramount consideration in determining the bankruptcy court's jurisdiction, and this Court has often relied on that consideration in determining its lack of jurisdiction over particular matters.[13]

But subject matter jurisdiction is also granted to the bankruptcy courts over matters involving neither estate administration nor creditors' distribution. Instead, core proceedings include *any* matter that "involves a substantive right provided by title 11 or [ ] is a procedure that, by its nature, could arise only the context of a bankruptcy case." <u>Cox</u>, 247 B.R. at 569 (quoting <u>Adams</u>, 212 B.R. at 715).

"Receiving a discharge is integral to the bankruptcy scheme, is unique to bankruptcy law, and is a core matter under 28 U.S.C. § 157(b)(2)(I)." <u>Smyrna Childcare Ctrs., LLC v. Melton (In re Melton)</u>, 2013 WL 2383957, *2 (Bankr. N.D. Ga. May 20, 2013). As such, determinations that affect the scope of that discharge necessarily

---

[13] <u>See, e.g.</u>, <u>Ostrander v. Surprise (In re Surprise)</u>, 443 B.R. 258, 262 (Bankr. D. Mass. 2011) (dismissing, for lack of any "related-to" jurisdiction, a third-party complaint for legal malpractice brought by non-debtor spouse against attorney because the action would have no effect on the bankruptcy estate); <u>Harris v. HSBC Bank USA (In re Harris)</u>, 450 B.R. 324, 334 (Bankr. D. Mass. 2011) (dismissing debtor's claims against mortgage creditor challenging the mortgage holder's status as holder of the note and mortgage as the claims existed independent of the bankruptcy case, there was no related-to jurisdiction since no proof of claim was filed, the property was exempt, and there was no potential distribution for creditors; once the creditor withdrew its motion for relief from stay, "there no longer remain[ed] any foothold in which to fasten jurisdiction over the remaining disputes regarding the Note or the Mortgage."); <u>Deceder v. Pa. Higher Educ. Assistance Agency (In re Deceder)</u>, 351 B.R. 261, 266-67 (Bankr. D. Mass. 2006) (dismissing Chapter 7 debtor's claims against student loan creditor for postpetition violations of state consumer protection laws as not "related to" the debtor's bankruptcy estate, but leaving open the question whether such violations may be relevant to the Debtor's request for a discharge of the student loan debt); <u>Adams v. Hartconn Assocs., Inc. (In re Adams)</u>, 212 B.R. 703, 715 (Bankr. D. Mass. 1997) (dismissing debtor's claims against a creditor for postpetition state law violations, as the claims would have no effect on either the bankruptcy estate or the debtor's fresh start.).

"arise in" or "arise under" the Bankruptcy Code.  They fall squarely within the bankruptcy court's *core* jurisdiction, regardless of the whether there is a potential impact on the bankruptcy estate or the distribution to creditors.[14]

The Court's second disagreement with the <u>Thrall</u> and <u>Cambio</u> analyses is their underlying assumption that the dischargeability of a particular debt and validity or amount of that debt are severable and can, or at least should be, separately determined. <u>Thrall</u>, 196 B.R. at 965-68; <u>Cambio</u>, 353 B.R. at 34. But even if the facts necessary to determine the amount or validity of the underlying debt are separable from those related to the requisites for nondischargeability, both the Bankruptcy Code and the jurisdictional statute treat the determination of the amount of any nondischargeable debt (as well as the extent of the debtor's liability on that debt) as an essential element of the matter to be determined by, and within the jurisdiction of, the bankruptcy court.

Section 523(a) provides that a discharge in a bankruptcy case "does not discharge an individual debtor from any *debt*" that falls into one of the exceptions enumerated in subsections (1) through (19), 11 U.S.C. § 523(a) (emphasis supplied),

---

[14] Furthermore, a proceeding that does not impact the estate directly, but nevertheless impacts rights created by the bankruptcy code, may also constitute a "related to" matter.  <u>See, e.g.</u>, <u>Celotex v. Edwards</u>, 514 U.S. at 307-08 ("We agree with the views expressed by the Court of Appeals for the Third Circuit in <u>Pacor, Inc. v. Higgins</u>, 743 F.2d 984 (1984), that 'Congress intended to grant comprehensive jurisdiction to bankruptcy courts so that they might deal efficiently and expeditiously with all matters connected with the bankruptcy estate, and that the 'related to' language of § 1334(b) must be read to give district courts (and bankruptcy courts under § 157(a)) jurisdiction over more than simple proceedings involving the property of the debtor or the estate.").  And, as the First Circuit Court of Appeals has explained, related-to jurisdiction also includes proceedings which could "alter [the] debtor's rights, liabilities, options, or freedom of action."  <u>Bos. Reg'l Med. Ctr., Inc. v. Reynolds (In re Bos. Reg'l Med. Ctr., Inc.)</u>, 410 F.3d 100, 105 (1st Cir. 2005) (quoting <u>G.S.F. Corp.</u>, 938 F.2d at 1475).
   Because, as evidenced by the defenses raised by the Debtor in this case, the scope of the underlying debt is often at issue in dischargeability proceedings, the liquidation of the debt is, if not a core matter, at least "related to" the dischargeability action.

and 28 U.S.C. § 157(b)(2)(I) provides that "determinations as to the dischargeability *of particular debts*" are core proceedings.  28 U.S.C. § 157(b)(2)(I) (emphasis supplied).  A "debt" is defined by the Bankruptcy Code as a "liability on a claim."  11 U.S.C. § 101(12).  A "claim," in turn, is defined (in relevant part) as a "right to payment."  11 U.S.C. § 101(5)(A).

Accordingly, in the context of the dischargeability proceeding, the bankruptcy court is not only tasked with determining whether the circumstances for nondischargeability enumerated in § 523(a) are established, but must also necessarily determine the scope of the debtor's "liability on [the] claim" and the creditor's "right to payment."  See Melton, 2013 WL 2383957 at *2 ("in order for this Court to decide whether Plaintiff's claims are non-dischargeable, the Court must first ascertain the claim . . . [b]efore this Court can determine if a debt is non-dischargeable, it must determine the debt because only then can it determine if it was "for" fraud, willful and malicious injury and the like").[15]  These determinations, contemplated by both § 523(a) and 28 U.S.C. § 157(b), place the existence and scope of the debtor's liability and the creditor's right to payment squarely within the bankruptcy court's core jurisdiction.[16]

The Court further departs with the Thrall and Cambio emphasis on the omission

---

[15] See also, e.g. Kennedy, 108 F.3d at 1018 (quoting Devitt, 126 B.R. at 215); McClaren, 3 F.3d at 966; Lawson v. Conley (In re Conley), 482 B.R. 191, 207 (Bankr. S.D. Ohio 2012); Van-Voegler v. Myrtle (In re Myrtle), 2013 WL 5652729, *5 (Bankr. W.D. Va. Oct. 15, 2013); Friedman, 300 B.R. at 151.

[16] Ironically, in her arguments against abstention, the Debtor essentially concedes the Court's core jurisdiction over the amount of the Plaintiffs' claims and her liability on the debts.  There, she emphasizes the fact that the determination of the existence of a "debt" within the meaning of 11 U.S.C. § 101(12) is an "essential element of the core matter before the court," and that "[i]t is elementary black letter law that an action seeking 'determinations as to the dischargeability of particular *debts*' is a 'core proceeding['] under 28 U.S.C. § 157(b)(2)(I)."  Debtor's Brief 4 (emphasis in original).

in the Bankruptcy Code of the former Bankruptcy Act's reference to the authority of the bankruptcy court to render "money judgments" in connection with dischargeability proceedings.  See Thrall, 196 B.R. at 964-65; Cambio, 353 B.R. at 33.  The statutory changes that accompanied the adoption of the Bankruptcy Code fundamentally restructured the bankruptcy courts' jurisdiction, creating a new, and greatly expanded, jurisdiction.  See generally Ralph Brubaker, On the Nature of Federal Bankruptcy Jurisdiction: A General Statutory and Constitutional Theory, 41 Wm. & Mary L. Rev. 743 (March 2000).  Congress clearly did not intend to shrink the jurisdiction of the bankruptcy courts with the passage of the Bankruptcy Code; indeed, the expanded jurisdiction of the bankruptcy courts under the Code

> was designed to subsume "all items listed by the Bankruptcy Commission in its proposed bill [which included jurisdiction over 'complaints requesting determination of the effect of a discharge, and seeking judgment on a debt excepted from discharge'] . . . as well as all items that the bankruptcy courts are now able to [h]ear [ ] under [the Bankruptcy Act] § 2a," including "determination of dischargeability of debts [ and] *liquidation of non-dischargeable debts*."  H.R. Rep. No. 95-595, at 446, 49 (1977) (emphasis added) (footnote . . . omitted), reprinted in 1978 U.S.C.C.A.N. 5963, 6401, 6010, see also id. at 363 (noting that "the comprehensive grant of jurisdiction prescribed in proposed statute . . . is adequate to cover the full jurisdiction that the bankruptcy courts have today over dischargeability and related issues under the Bankruptcy Act § 17c"), reprinted in 1978 U.S.C.C.A.N. at 6319, S.Rep. No. 95-989, at 77 (1978) (same), reprinted in 1978 U.S.C.C.A.N. 5787, 5863.

Id. at 914 n. 598 (emphasis supplied).[17]

In short, this Court holds that a determination of the amount of a claim deemed not discharged, (unless the Court abstains as described below) is an essential element

---

[17] See also Morrison, 555 F.3d at 479 ("It is not unreasonable to conclude that Congress, which intended bankruptcy courts to exercise far more expansive jurisdiction under the Code than under previous law, could not have intended to cut back on their ability to enter money judgments in the core proceedings encompassed by non-dischargeability complaints.").

of the dischargeability proceeding – a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I)[18] and one that fundamentally alters and affects the substantive right to a discharge provided by the Bankruptcy Code.[19]

### b.   Abstention

Because the Court holds that it may hear and determine, as core matters, the parties' dispute regarding the validity and extent of the debts at issue in this dischargeability proceeding, the Plaintiffs' alternative request for abstention is essentially moot.  It may be appropriate, in some dischargeability proceedings, for the Court to abstain from deciding discrete and severable matters regarding the liquidation of the underlying debt,   see 28 U.S.C. § 1334(c)(1) (with respect to "a proceeding

---

[18] The fact that the Court must in this case (or any other case) refer to state law in determining the extent and validity of the underlying debt does not strip the matter of its core status.  28 U.S.C. § 157(b)(3); see also Arnold Print Works v. Apkin (In re Arnold Print Works, Inc.), 815 F.2d 165, 169 (1st Cir. 1987).

[19]  Following the Supreme Court's decision in Stern v. Marshall, -- U.S. --, 131 S.Ct. 2594, 180 L.Ed.2d 475 (2011), some bankruptcy courts have questioned their jurisdiction to liquidate damages in dischargeability actions based on the holding in that case.  See, e.g., Condon Oil v. Wood (In re Wood), 2013 WL 4478902, *2-3 (Bankr. W.D. Wisc. Aug. 19, 2013) (holding that the bankruptcy court lacked the constitutional authority to enter a money judgment on a nondischargeable debt where the underlying debt was based on a claim arising under state law); DeAngelis v. Antonelli (In re Antonelli), 2011 WL 5509494, *1 (Bankr. D.R.I. Nov. 10, 2011) (questing the validity of Hallahan in light of Stern) (cited for same proposition by Rutowski v. Adas (In re Adas), 488 B.R. 358, 379 (Bankr. N.D. Ill. 2013)).
First, at least with regard to the Wood case, the Court disagrees with that court's underlying premise that the "amount of the debt is patently unnecessary to a determination that it is nondischargeable." 2013 WL 4478902, at *2.  More importantly, however, Stern involved a counterclaim by the debtor which, in its view, was not necessary to resolution of the core matter before the bankruptcy court (the validity of a proof of claim). 131 S.Ct. at 2611, 2617-18.  Here, because the determination of the validity and amount of a nondischargeable debt are not only prescribed by the Bankruptcy Code and relevant jurisdictional statute, but are also directly intertwined with the dischargeability determination, Stern's holding regarding the constitutional limitations of the bankruptcy courts' jurisdiction is inapplicable.  See Melton, 2013 WL 2383657 at *2; Conley, 482 B.R. at 206-07; Anthony v. Hobbs (In re Hobbs), 2012 WL 4434469, *5 (Bankr. E.D. Texas Sept. 24, 2012); Deitz v. Ford (In re Deitz), 469 B.R. 11, 23-24 (B.A.P. 9th Cir. 2012); Justmed, Inc. v. Byce (In re Byce), 2011 WL 6210938, *3 (D. Idaho Dec. 14, 2011); Carroll v. Farooqi (In re Carroll), 4664 B.R. 293, 309-313 (Bankr. N.D. Texas 2011); Dragisic v. Boricich (In re Boricich), 464 B.R. 335, 337 (Bankr. N.D. Ill. 2011).

arising under title 11 or arising in or related to a case under title 11," the court may abstain "in the interest of justice, or in the interest of comity with State courts or respect for State law"); see also New England Power & Marine, Inc. v. Town of Tyngsborough (In re Middlesex Power Equip. & Marine, Inc.), 292 F.3d 61 (1st Cir. 2002), but the Court declines to exercise such discretion in this case.

While the "precise factors that a court must consider" have not been enumerated by the First Circuit, "factors that other courts have considered" that have been "expressly mentioned" by the First Circuit include:

> (1) the extent to which state law issues predominate over bankruptcy issues,

> (2) the presence of a related proceeding commenced in state court or other nonbankruptcy court, and

> (3) the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties.

Haber v. Massey, 904 F.Supp. 2d 136, 147 (D. Mass. 2012). None of those considerations are applicable here.

## IV.  CONCLUSION

For all the foregoing reasons, the Court finds that consolidation of the Claims Objection and the Adversary Proceeding is appropriate, and will GRANT the Plaintiffs' Consolidation Motion. Further, the Court rules that the determination of the amount of the debts, as well as the Debtor's liability therefor, which underlie the Plaintiffs' nondischargeability Complaint, constitute core matters over which this Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1334(b) and 157(b). Accordingly, the Plaintiffs' Summary Judgment Motion will also be GRANTED. Orders in conformity with

this Memorandum shall issue forthwith.


DATED:  January 7, 2014                    By the Court,


_____
                                           Henry J. Boroff
                                           United States Bankruptcy Judge