# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF MASSACHUSETTS
# EASTERN DIVISION

| | |
|---|---|
| In re:<br><br>    WEN JING HUANG and<br>    CAN QI LIANG,<br><br>                      Debtors | Chapter 7<br>Case No. 11-10416-HJB |
| JUAN JUAN CHEN, XING HUA CHEN, YAN XIONG CHEN, SHU FENG GAO, CHUN YAN GUAN, CAROL HUANG, QIU MEI LI, CAI MEI LIU, LI JUAN LIU, MEI YING MAI, ZHU LAN SU, CONNIE IOK WU, NIAN CI XIE, SHAO JUAN ZHONG, and MEI YAN ZHOU,<br><br>                      Plaintiffs,<br>v.<br><br>WEN JING HUANG,<br><br>                      Debtor. | Adversary Proceeding<br>Case No. 12-01265-HJB |

## **MEMORANDUM OF DECISION**

Juan Juan Chen, Xing Hua Chen, Yan Xiong Chen, Shu Feng Gao, Chun Yan Guan, Carol Huang, Qiu Mei Li, Cai Mei Liu, Li Juan Liu, Mei Ying Mai, Zhu Lan Su, Connie Iok Wu, Nian Ci Xie, Shao Juan Zhong, and Mei Yan Zhou, the plaintiffs in this adversary proceeding (the "Plaintiffs") seek a determination that their claims are excepted

1

from discharge under § 523(a) of the Bankruptcy Code[1] or, in the alternative, that the debtor and defendant, Wen Jing Huang, a/k/a Wen Jing Liang (the "Debtor") is not entitled to a discharge under § 727(a). As grounds, the Plaintiffs say that the Debtor, the principal officer and sole stockholder of their employer Millennium Daycare, Inc. ("Millennium Daycare"), fraudulently induced them to work without compensation despite Millennium Daycare having the financial means to make payment. They also contend that the Debtor made false oaths in her individual bankruptcy case and in the bankruptcy case of Millennium Daycare, and improperly transferred assets belonging to her individual bankruptcy estate and the Millennium Daycare bankruptcy estate.

The disputes in this adversary proceeding can be divided into three categories. First, whether the Court has the jurisdiction to determine the amount of the claims. Second, whether the Debtor is liable to the Plaintiffs in her individual capacity. And third, whether those claims, if extant, can be discharged. As described below, the first two questions have already been decided in the Plaintiffs' favor. What remains before the Court are the questions of discharge and dischargeability. Based upon the testimony and documentary evidence presented during the trial on this remaining question, the Court makes the following findings of fact and rulings of law, pursuant to Federal Rule of Bankruptcy Procedure 7052.

---

[1] See 11 U.S.C. §§101 et seq. All reference to statutory sections are to the Bankruptcy Code unless otherwise specified.

I. FACTS AND TRAVEL OF THE CASE

The Debtor, together with her husband, Can Qi Liang, filed an individual Chapter 13 case on January 19, 2011 (the "Individual Case"). The case was converted to Chapter 7 on May 12, 2011. It was not the Debtor's first experience with the Bankruptcy Court. The Debtor was the owner and operator of at least three business entities, two of whom had filed bankruptcy petitions in the year prior to the commencement of the Individual Case (one such entity on two different occasions).

First, the Debtor owned and controlled Millennium Daycare, the provider which had employed the Plaintiffs and operated three childcare centers in Massachusetts. Millennium Daycare filed its first Chapter 11 bankruptcy petition on August 24, 2010 [Case No. 10-19124] and, when that case was dismissed on September 1, 2010 for failure to file required case documents, filed its second Chapter 11 bankruptcy petition on October 5, 2010 (the "Millennium Daycare Case" and the "Millennium Petition Date") [Case No. 10-20945]. On motion of the United States trustee, the Millennium Daycare case was converted to one under Chapter 7 on March 29, 2011 (the "Millennium Conversion Date"). And upon conversion, Millennium Daycare ceased operations.

Second, the Debtor owned and controlled Millennium Eatery, Inc. d/b/a New Beijing Restaurant ("New Beijing Restaurant"). New Beijing Restaurant filed a Chapter 11 bankruptcy petition on September 16, 2010 [Case No. 10-44600]. The New Beijing Restaurant case was dismissed on December 14, 2010 for failure to file required case documents.

Third, the Debtor was the sole trustee and beneficiary of the Huang Sang Realty Trust, which owned real property located at 165 Mountain Avenue in Malden,

3

Massachusetts (the "Mountain Avenue Property") and 1250 Osgood Street in North Andover, Massachusetts (the "Osgood Street Property"). The Mountain Avenue Property was rented by Millennium Daycare. The Osgood Street Property was rented by the New Beijing Restaurant.

The Plaintiffs in this matter are fifteen (15) former employees of Millennium Daycare.[2] Each of the Plaintiffs is owed between one to six months of unpaid wages. In the final year of Millennium Daycare's operations, the Plaintiffs were paid in arrears and consistently late, such that the Plaintiffs now hold both prepetition and postpetition claims against Millenium Daycare. Yet neither the list of creditors, nor the schedules in the Millennium Daycare Case – signed by the Debtor under the pains and penalties of perjury - identified the Plaintiffs as creditors of Millennium Daycare, although Schedule E does list "Millennium Daycare Wages" without further elaboration as to the identity of the affected employees. It was not until May 27, 2011, following the Millennium Conversion Date, that the Debtor caused Millennium Daycare to file an Amended Schedule E which identified the Plaintiffs.

In addition, neither the list of creditors, the original schedules, nor the amended schedules in the Individual Case – signed by the Debtor under the pains and penalties of perjury - identified the Plaintiffs as creditors of the Debtor. On May 26, 2011, two weeks after the Individual Case was converted, the Debtor filed a statement, claiming she had no postpetition creditors.

---

[2] The original complaint in this proceeding was filed by sixteen (16) plaintiffs. On July 8, 2014, the Debtor filed a motion to dismiss the case as to one plaintiff, Yat Man Law, and to disallow Ms. Law's claim based upon her failure to respond to discovery requests (the "Motion to Dismiss and Disallow"). No objection or other response was filed and, following a hearing, the Motion to Dismiss and Disallow was granted.

4

Approximately two (2) months after the Millennium Conversion Date, in May of 2011, the Plaintiffs filed a complaint with the Massachusetts Attorney General on account of their earned but unpaid Millennium Daycare wages. Shortly thereafter, the Debtor requested and conducted a meeting with the Plaintiffs. At that meeting, the Debtor produced and signed handwritten documents acknowledging wage amounts owed to each of the Plaintiffs (the "IOUs").

The Plaintiffs and the Chapter 7 trustee of Millennium Daycare eventually reached a settlement in the Millennium Daycare Case, with the trustee agreeing that the Plaintiffs held Chapter 11 administrative claims which would be paid, but of course only if sufficient funds existed to pay their claims at their priority level.[3] Sufficient funds were never recovered in the Millennium Daycare Case and no distribution was made to the Plaintiffs. In fact, as reflected in the Chapter 7 trustee's final report, the case was administratively insolvent and Chapter 7 administrative expenses were only partially paid. The Millennium Daycare bankruptcy case was closed on August 7, 2015.

### A. This Court's Jurisdiction to Determine the Claims – A Recap of Round One

On May 15, 2013, the Plaintiffs filed a "Motion for Partial Summary Judgment Confirming the Court's Ability to Enter Judgment Under the Massachusetts Wage Act or, in the Alternative, for Abstention on the Issue of Liability and Amount Due to Plaintiffs"[4] (the "First Summary Judgment Motion"). By the First Summary Judgment Motion, the

---

[3] On October 9, 2012, the Court granted the joint motion of the Plaintiffs and the duly appointed Chapter 7 trustee of Millennium Daycare, John O. Desmond, to allow administrative expenses of the Plaintiffs in the aggregate amount of $46,526.86, to be paid only to the extent funds became available for distribution on Chapter 11 administrative expense claims.

[4] The Plaintiffs also sought to consolidate for trial the adversary proceeding and the separately filed objections by the Debtor to the Plaintiffs claims. That request was contemporaneously considered and granted by the Court.

5

Plaintiffs' sought a determination that this Court had subject matter jurisdiction to liquidate the amount of the Massachusetts Wage Act claims against the Debtor, and to enter judgment accordingly. By Order dated January 7, 2014, this Court ruled that it had (and has) jurisdiction to determine both the amount of the debts owed by the Debtor to the Plaintiffs, and the Debtor's liability for those debts. <u>Chen et al. v. Huang (In re Huang)</u>, 509 B.R. 742 (Bankr. D. Mass. 2014).

### B. The Claims of the Plaintiffs – A Recap of Round Two

On September 17, 2014, this Court granted further partial summary judgment in favor of the Plaintiffs, and found that the Debtor failed to pay the sums due to the Plaintiffs in the amounts and for the periods set forth in the Complaint. Because the Debtor was the president, treasurer and sole owner of Millennium Daycare, and controlled the operations and finances of the company, the Plaintiffs maintained (successfully) that the Debtor was individually liable for their unpaid wages under Massachusetts General Laws ("MGL") ch. 149, §§148 and 150 (the "Massachusetts Wage Act").

The Court trebled the amounts due pursuant to the Massachusetts Wage Act, but did not liquidate Plaintiffs' entitlement to their costs and attorneys' fees because those costs and attorneys' fees were ongoing. Therefore, the Plaintiffs' claims against the Debtor, exclusive of costs and attorneys' fees, have been established as follows:

6

| Plaintiff | Original Claim | Trebled Claim |
|---|---|---|
| Juan Juan Chen | $1,000.00 | $3,000.00 |
| Xing Hua Chen | $1,078.67 | $3,236.01 |
| Yan Xiong Chen | $4,819.71 | $14,459.13 |
| Shu Feng Gao | $1,694.77 | $5,084.31 |
| Chun Yan Guan | $2,224.54 | $6,673.62 |
| Carol Huang | $2,467.62 | $7,402.86 |
| Qiu Mei Li | $4,075.96 | $12,227.88 |
| Cai Mei Liu | $1,266.04 | $3,798.12 |
| Li Juan Liu | $3,719.97 | $11,159.91 |
| Mei Ying Mai | $3,116.17 | $9,348.51 |
| Zhu Lan Su | $5,400.00 | $16,200.00 |
| Connie Iok Wu | $8,933.75 | $26,801.25 |
| Nian Ci Xie | $1,880.56 | $5,641.68 |
| Shao Juan Zhong | $4,110.51 | $12,331.53 |
| Mei Yan Zhou | $5,602.27 | $16,806.81 |
| **TOTAL** | **$51,390.54** | **$154,171.62** |

**C. Discharge and Dischargeability – Turning to Round Three**

Following Rounds One and Two, what remained were the issues of discharge and dischargeability. A five-day trial was conducted by this Court as to the Plaintiffs' claims under §§ 523(a) and 727(a).

II.   DISCUSSION

The benefits afforded to debtors by the Bankruptcy Code are substantial, but they are not absolute. As explained by the First Circuit in Tully:

> [T]he very purpose of certain sections of the law, like 11 U.S.C. § 727(a)(4)(A), is to make certain that those who seek the shelter of the bankruptcy code do not play fast and loose with their assets or with the reality of their affairs. The statutes are designed to insure that complete, truthful, and reliable information is put forward at the outset of the proceedings, so that decisions can be made by the parties in interest based on fact rather than fiction. As we have stated, "[t]he successful functioning of the bankruptcy act hinges both upon the bankrupt's veracity and his willingness to make a full disclosure." Mascolo, 505 F.2d at 278. Neither the

7

> trustee nor the creditors should be required to engage in a laborious tug-of-war to drag the simple truth into the glare of daylight. See In re Tabibian, 289 F.2d 793, 797 (2d Cir.1961); In re Shebel, 54 B.R. at 202.
> ...
> A petitioner cannot omit items from his schedules, force the trustee and the creditors, at their peril, to guess that he has done so—and hold them to a mythical requirement that they search through a paperwork jungle in the hope of finding an overlooked needle in a documentary haystack.

Boroff v. Tully (In re Tully), 818 F.2d 106, 110-11 (1st Cir. 1987).

In sum, the goal of our bankruptcy system is to provide relief to the *honest* debtor and to do so in a way that treats creditors fairly. Still, bankruptcy courts, including this one, are ever mindful that excepting debts from discharge or, worse yet, denial of a debtor's discharge altogether, are severe sanctions, and great care must be taken when examining whether such a remedy is warranted on account of a debtor's prepetition or postpetition misconduct. See, e.g., J.P. Morgan Chase Bank, N.A. v. Koss (In re Koss), 403 B.R. 191 (Bankr. D. Mass. 2009); Annino, Draper & Moore, P.C. v. Lang (In re Lang), 246 B.R. 463, 468 (Bankr. D. Mass. 2000), aff'd, 256 B.R. 539 (1st Cir. BAP 2000).

Because a determination of whether the Debtor is entitled to a discharge may moot the question of the dischargeability of the Plaintiffs' specific claims, the Court begins with § 727(a). And because the Plaintiffs' allegations hinge on the Debtor's conduct not only in the Individual Case, but also in the Millennium Daycare Case, the very first step is an analysis of the applicability of § 727(a)(7).

**A. 11 U.S.C. § 727(a)**

   *i.    Section 727(a)(7)*

Section 727(a)(7) of the Bankruptcy Code provides that discharge may be denied where:

> the debtor has committed any act specified in paragraph (2), (3), (4), (5), or (6) of this subsection, on or within one year before the date of the filing of the petition, or during the case, in connection with another case . . . concerning an insider[.]

Here, there is no dispute that the Debtor was an insider of Millennium Daycare and, as the sole owner and officer of Millennium Daycare, acted on that debtor's behalf in connection with the Millennium Daycare Case. Accordingly, the question becomes whether the Debtor's actions *with respect to the Millennium Daycare case* between October 5, 2009 (one year prior to the Millennium Petition Date) and August 7, 2015 (the date on which the Millennium Daycare case was closed) constitute grounds for discharge denial under §§ 727(a)(2) and/or (a)(4).

   *ii.   Section 727(a)(2)*

A debtor's discharge may be denied under Section 727(a)(2) where:

(2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed –

   (A) property of the debtor, within one year before the date of the filing of the petition; or

   (B) property of the estate, after the date of the filing of the petition.

The purpose of section 727(a)(2) is to prevent the discharge of a debtor who attempts to avoid payment to creditors by concealing or otherwise inappropriately disposing of assets. 6 C<small>OLLIER ON</small> B<small>ANKRUPTCY</small> ¶ 727.02[2][a] (Alan N. Resnick & Henry

9

J. Sommer eds., 15th ed. rev.). A party seeking denial of a debtor's discharge must demonstrate "(1) transfer or concealment of property, (2) that belonged to the debtor, (3) less than a year before the bankruptcy petition, (4) with actual intent to hinder, delay or defraud a creditor." Marrama v. Citizens Bank (In re Marrama), 445 F.3d 518, 522 (1st Cir. BAP 2006) (citing Razzaboni v. Schifano (In re Schifano), 378 F.3d 60, 66–67 (1st Cir. 2004)). Certain transfers have been identified as "badges of fraud", including transfers: (i) made to insiders or persons with whom the debtor has a confidential relationship, (ii) without valuable consideration, (iii) during time of the debtor's financial distress, (iv) in an attempt to conceal assets, and (v) constituting a pattern of hiding assets that should have been subject to the bankruptcy proceeding,. Marrama at 524. See also, Xerox Fin. Servs. Life Ins. Co. v. Sterman (In re Sterman), 244 B.R. 499, 504 (D. Mass.1999). Ultimately, when determining whether a debtor possessed the requisite § 727(a)(2) intent, courts must consider the "totality of the circumstances." Warchol v. Barry (In re Barry), 451 B.R. 654, (1st Cir. BAP 2011).

  iii.  *Section 727(a)(4)*

A debtor's discharge may be denied under Section 727(a)(4)(A) where:

(4) the debtor knowingly and fraudulently, or in connection with the case –

  (A) made a false oath or account;

  . . .

It is well settled in the First Circuit that to prevail on a claim under 11 U.S.C. §727(a)(4), a plaintiff must prove that: (1) the debtor knowingly and fraudulently made a false oath; and (2) the false oath related to a material fact. Boroff v. Tully (In re Tully), 818 F.2d 106, 110 (1st Cir. 1987); see also, e.g., Robin Singh Educational Services, Inc.

10

v. McCarthy (In re McCarthy); 2012 WL 3716796, *10 (Bankr. D. Mass. Aug. 27, 2012). "A debtor's discharge should not be denied under § 727(a)(4)(A) if the false statement or omission is the result of mistake or inadvertence ... or if the mistake is technical and not real." Gordon v. Mukerjee (In re Mukerjee), 98 B.R. 627, 629 (Bankr. D. N.H.1989). The plaintiff bears the initial burden, but "once it reasonably appears that the oath is false, the burdens falls upon the bankrupt to come forward with evidence that he has not committed the offense charged." Tully at 110. If done knowingly and fraudulently, false statements in the schedules or false statements by the debtor during the case may be sufficient for a finding under section 727(a)(4). Nickless v. Cancelmo (In re Cancelmo), 2015 WL 2444507, *7 (Bankr. D. Mass. May 20, 2015) (citing to The Cadle Co. v. Duncan (In re Duncan), 562 F.3d 688, 696 (5th Cir. 2009)).

### B. Application of the Evidence Adduced at Trial

At the trial, all fifteen (15) of the Plaintiffs took the stand, almost all with the benefit of an interpreter. The Plaintiffs uniformly testified that they were employees of Millennium Daycare and, in the final year of Millennium Daycare's operations, experienced routine delays in wage payments. The checks they did receive were frequently dishonored for insufficient funds; yet, during the same period, Millennium Daycare did not experience a decline in enrollment and remained at or near capacity. The Plaintiffs also testified that they were not timely informed that either Millennium Daycare or the Debtor had filed bankruptcy cases, received frequent reassurances from the Debtor that they would be paid and relied on those assurances. Finally, the Plaintiffs testified that, had they been notified of the bankruptcy case filings, they would have ceased working, demanded

payment of back wages and/or taken other saving measures. The Plaintiffs were highly credible in their testimony.

With respect to the Individual Case, the Plaintiffs indisputably demonstrated at trial that the Debtor failed to disclose her interest in, or income from, the Huang Sang Realty Trust in her schedules and statement of financial affairs in the Individual Case. Indeed, the trust owned two parcels of commercial real estate, had monthly income of approximately $27,000 and, during the pendency of the Individual Case, became entitled to property damage insurance proceeds in the amount of $29,715.98. Post-conversion, the Debtor withdrew those insurance proceeds without notice to, or permission from, the Chapter 7 trustee.

The Debtor also failed to disclose in her schedules or statement of affairs that she was the owner of three insurance policies, including a life insurance policy issued by Prudential Insurance Company. Postpetition and post-conversion, the Debtor received life insurance policy proceeds from Prudential totaling $38,407.27, which sum she caused to be deposited into the account of her son, Andrew Liang.

With respect to the Millennium Daycare case, the Plaintiffs also indisputably demonstrated at trial that during the one year prior to the Millennium Petition Date and continuing through the course of the case, the Debtor caused Millennium Daycare to make substantial transfers of assets to insiders, at a time in which the debtor was experiencing financial distress, and for no consideration. Those transfers included the deposit of checks made payable to Millennium Daycare directly into the Debtor's personal account and/or the account of her son, Jack Liang; the payment by Millennium Daycare for personal expenses of the Debtor unrelated to the operation of Millennium Daycare;

the transfer of Millennium Daycare funds to Huang Sang Realty Trust and New Beijing Restaurant; the transfer of Millennium Daycare funds to the Debtor's husband, Can Qi Liang and two sons, Andrew Liang and Jack Liang; the transfer of Millennium Daycare funds to the Debtor's cousin on account of a prepetition loan made to the Debtor, and the transfer of the personal property of Millennium Daycare to family members of the Debtor. The Debtor failed to disclose any of the prepetition transfers in the Millennium Daycare schedules or statement of financial affairs. The post-conversion transfers were made without notice to, or permission from, the Chapter 7 trustee. In addition, although Millennium Daycare made monthly payments to the Huang Sang Realty Trust of approximately $8,000/month, the Debtor failed to disclose those payments as payments to an affiliate in the Millennium Daycare statement of financial affairs.

The Debtor presented testimony solely from the Debtor.[5] The Debtor did not dispute her actions alleged by the Plaintiffs. The Debtor has admitted that she omitted information from the schedules and statement of financial affairs, and that she failed to notify the trustees of the Millennium Daycare Case and the Individual Case both before and after she took those postpetition actions. She admitted that she made the subject transfers from both bankruptcy estates to herself and her affiliates. She even conceded that the Millennium Daycare revenues, absent the transfers, would have been adequate to pay the employee wages.

---

[5] On the day of trial, the Debtor sought to designate two additional witnesses, Attorney Timothy Mauser and Mr. Can Qi Liang. Because the Debtor failed to timely disclose the witnesses, as required by this Court's Pre-Trial Order of January 23, 2014 and Fed.R.Bankr.P. 7037(c), those witnesses were excluded.

Nevertheless, the Debtor maintains that her discharge should not be denied because she did not have the requisite intent to defraud or conceal as required for denial of discharge under §§ 727(a)(2) or (a)(4) -- which she says is corroborated by the albeit untimely wage payments she made to the Plaintiffs throughout the last year of Millennium Daycare's operations, and the IOUs she presented to the Plaintiffs after the Millennium Conversion Date.  The real problem, according to the Debtor, was two-fold.  First, the Debtor says, she received inadequate advice of counsel.  Second, the Debtor says, her English language limitations hampered her understanding of her duties and obligations under the Bankruptcy Code.

The Debtor concedes that, standing alone, her defense of inadequate assistance of counsel must fail.  It is well-settled that reliance on the advice of counsel "is no defense where it should have been evident to the debtor that the assets ought to be listed in the schedules."  In re Tully, 818 F.2d at 111. The Debtor maintains, however, that inadequate assistance of counsel provides a valid defense when considered in conjunction with her language barrier.

This Court disagrees that *in this case* the Debtor's alleged language barrier[6] elevated her inadequate assistance of counsel argument to any meaningful level.  Even were the Court to have found the Debtor's testimony in the least bit credible (it did not) in this regard, the logic of Tully is equally applicable to the Debtor's claim that her conduct

---

[6] The Court pauses here to note that it does not believe that the Debtor suffered at any relevant time, or now suffers, from any meaningful language barrier.  The Debtor, who has resided in this country for eighteen (18) years, owned and leased two parcels of commercial real estate and owned and conducted three (3) separate businesses.  The Court believes that the Debtor's claim that she was unable to speak or write in the English language is pretextual.  Nevertheless, even in the unlikely event that the Debtor was unable to transact her affairs in any other than her native language, there is no difference in the outcome here.

14

was the result of a language barrier: "a debtor cannot, merely by playing ostrich and burying his head deeply enough in the sand, disclaim all responsibility for statements which he has made under oath." Id.

In these circumstances, the Debtor is poorly postured to assert a language barrier as a defense. In the Millennium Daycare Case, the Debtor utilized counsel, Attorney Peter Lim, who is bilingual. The Debtor testified that their communications took place in her native Chinese language. The Debtor also testified that she entrusted Attorney Lim to, generally, "resolve the problems" and made no efforts to seek a translation of documents prior to signing them under the pains and penalties of perjury.

Likewise, the Debtor's claims that she misunderstood the bankruptcy process and her obligations thereunder are not credible. The Debtor's claims of innocent mistake and naiveté ring hollow. The Debtor's undisputed pattern of conduct was compelling evidence of her intentions.

The Debtor's credibility was also undermined by her conflicting testimony. In her "Affidavit in Support of Debtor's Opposition to Summary Judgment", and in her "Responses to Requests for Admission", the Debtor claimed to have timely informed the Plaintiffs about the bankruptcy case proceedings. On the stand at trial, however, the Debtor admitted this was untrue. She had not informed the Plaintiffs of the existence of the Millennium Daycare case prior to the Millennium Conversion Date. In her "Affidavit in Support of Debtor's Opposition to Summary Judgment", the Debtor claimed that insurance funds received postpetition were used to repair water damage at the Mountain Avenue Property. On the stand at trial, however, the Debtor admitted this was untrue. She first testified that the funds were used to pay the mortgage on the Osgood Street

15

Property, then later testified that the funds were used to pay both the repair costs at the Mountain View Property *and* the mortgage on the Osgood Street Property. Finally, in her "Affidavit in Support of Debtor's Opposition to Summary Judgment", the Debtor claimed that she had notified the Chapter 7 trustee in the Individual Case of her receipt of the insurance funds, but that the trustee "expressed no interest in the matter." On the stand at trial, however, the Debtor admitted this was untrue. She had not informed the trustee of the existence of those funds.

This Court also finds no import whatsoever to the Debtor's issuance of post-conversion IOUs. The timing of the issuance of those IOUs is a bit too convenient. The Debtor withheld the fact of the bankruptcy case filings from the Plaintiffs for over six months. Only after Millennium Daycare ceased operations, and the Debtor had no further need for the services of the Plaintiffs, did she offer the IOUs.

Upon consideration of the evidence and arguments presented at trial, this Court finds and rules that the Debtor made false oaths relating to material facts in both the Individual Case and the Millennium Daycare case, and that she did so knowingly and fraudulently. This Court further finds and rules that the Debtor attempted to hinder, delay or defraud the respective Chapter 7 trustees by transferring and concealing assets in both the Individual Case and the Millennium Daycare Case, and that she did so with actual intent to so conceal and defraud. Accordingly, the Plaintiffs have sustained their burden that the Debtor is not entitled to a discharge pursuant to §§ 727(a)(2) and (a)(4) on account of her actions in the Individual Case. The Plaintiffs have also sustained their burden that the Debtor is not entitled to a discharge pursuant to §§ 727(a)(2) and (a)(4),

16

as made applicable by § 727(a)(7), on account of her actions in the Millennium Daycare case.

### C. 11 U.S.C. § 523(a)

The Plaintiffs have also sought a determination that their claims against the Debtor are nondischargeable under §§ 523(a)(2), (a)(4) and (a)(6). Because this Court has already determined that the Debtor is not entitled to a discharge pursuant to § 727(a), it need go no further. The Plaintiffs' requests for a determination that their claims are nondischargeable under § 523(a) are now moot.

### III. CONCLUSION

For the reasons set forth above, judgment will be entered in the Plaintiffs' favor and against the Debtor on Count III of the "Second Amended Complaint of Workers Objecting to Discharge of Debt." Count II will be dismissed as moot. Summary judgment has previously been entered, by Order dated September 17, 2014, in the Plaintiffs' favor and against the Debtor on Count I. Furthermore, consistent with this Court's Order of September 17, 2014, consolidating for trial the Debtor's objections to the Plaintiff's claims, those objections are overruled for the reasons set forth above.

By the Court,

_____
Henry J. Boroff
United States Bankruptcy Judge

Dated: January 15, 2016